UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REV. MAHN COALEY KRUA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ELLEN JOHNSON SIRLEAF, et al.,<br><br>Defendants. | Civil Action No. 18-10574-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                     May 1, 2019

### I. Introduction

This case arises out of claims by *pro se* Plaintiffs Reverend Mahn Coaley Krua and Pastor Torli Harlan Krua (collectively, "the Kruas") arising principally out of actions in Liberia. The Kruas allege violations of numerous federal statutes. They have made their claims against ten defendants, Ellen Johnson Sirleaf, Charles G. Taylor, Jucontee Thomas Woewiyu, the estate of Samuel K. Doe and George M. Weah (collectively, "the Liberia Defendants"), Secretary of the Navy Richard V. Spencer, Secretary of State Mike Pompeo and Secretary of Homeland Security Kirstjen Nielsen (collectively, "the Federal Defendants"),[1] Governor of Massachusetts Charlie Baker and Baptist Mid-Missions ("BMM"). BMM has moved to dismiss for lack of personal

---

[1] Plaintiffs stipulated to the dismissal of the Federal Defendants from the litigation on December 21, 2018. D. 34.

1

jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), respectively, or, in the alternative, to require a more definite statement. D. 26. For the reasons set forth below, the Court ALLOWS BMM's motion to dismiss.

## II. Standard of Review

To satisfy the prima facie standard for establishing personal jurisdiction over the defendants pursuant to Fed. R. Civ. P. 12(b)(2), a plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citation and quotations omitted). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The Court will then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Id. Notwithstanding the liberality of this approach, the court will not "credit conclusory allegations or draw farfetched inferences" in determining whether there is a lack of personal jurisdiction over defendants under Fed. R. Civ. P. 12(b)(2). Ticketmaster, 26 F.3d at 203.

To decide a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). "The plaintiff need not demonstrate [they are] likely to prevail" at this stage, only that their claims are facially plausible. Garcia- Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013). Plausible means "more than

2

a sheer possibility," and permits the Court to incorporate a contextual analysis of the facts. Id. at 102-03 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This determination requires a two-step inquiry. Id. at 103. First, the Court must distinguish the factual allegations from the conclusory legal allegations in the complaint. Id. Second, taking plaintiff's allegations as true, the Court should be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678); Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 11 (1st Cir. 2011). In assessing the plaintiff's showing, the Court may accept all well-pleaded allegations as true, unless they are contradicted by the defendant's affidavits. See Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts, 898 F. Supp. 2d 301, 317 (D. Mass. 2012) (quoting Turnley v. Banc of Am. Inv. Services, Inc., 576 F. Supp. 2d 204, 211 (D. Mass. 2008)). The Court is not required to accept as true any legal conclusions. Iqbal, 556 U.S. at 678.

When a plaintiff is *pro se*, the Court must apply a liberal reading to the complaint and hold *pro se* litigants to a less stringent pleading standard. Kruskall v. Sallie Mae Serv., Inc., No. 15-cv-11780-DJC, 2016 WL 1056973, at *1 (D. Mass. Mar. 14, 2016) (citing Green v. Com. of Mass., 108 F.R.D. 217, 218 (D. Mass. 1985)). A *pro se* plaintiff, however, must still comply with procedural and substantive law and "dismissal remains appropriate . . . when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001).

## III. Factual Allegations

The following relevant facts are taken from the Kruas' second amended complaint, D. 13-1,[2] and BMM's affidavits in support of its motion to dismiss, D. 27-1 and D. 51-2.[3]

The Kruas, born in Liberia, are both naturalized American citizens residing in Massachusetts. D. 13-1 at ¶¶ 62, 103. BMM is an Ohio corporation with its principal place of business in Ohio. D. 27-1 at ¶ 3. The Kruas allege certain discriminatory and "dehumanizing" activities by BMM in Liberia. D. 13-1 at ¶¶ 133-189. With respect to conduct occurring within the United States, the Kruas allege that BMM sent two missionaries to Boston to take the Kruas grocery shopping, id. at ¶ 172, that the Kruas sent tickets to a fundraising dinner to BMM and BMM returned the tickets, id. at ¶ 173, and that BMM discriminated against Plaintiff Reverend Krua in denying him employment when he sought work with the organization, id. at ¶ 185.

BMM is not registered or authorized to do business in Massachusetts and has no property or bank accounts in Massachusetts. D. 27-1 at ¶¶ 5-7. Of the 444 active BMM missionaries, seventy-two are in the United States and two missionary families are in Massachusetts. Id. at ¶ 10. The missionaries do not receive direct income from BMM. Id. There are 4,340 churches and 7,428 individuals in the United States that support BMM, with twenty-eight of the churches and thirty-nine of the individuals in Massachusetts. Id. at ¶¶ 11-12. Almost all funds generated in

---

[2] The Court will treat D. 13-1, an exhibit to the Kruas' motion for extension of time to serve defendants, D. 13, as a second amended complaint in this action. Although the exhibit has never been filed as a second amended complaint, nor has leave to file such been sought, the Court does so here given the plaintiffs' status as *pro se* litigants and the fact that BMM also treats D. 13-1 as the operative complaint.

[3] The Court denies the pending motion to strike, D. 48, the affidavits attached to the Kruas' amended opposition, D. 43, as moot since the Court does not rely upon them in resolving the pending motion to dismiss. In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the Court is bound to consider only the facts alleged in the complaint, accepting those facts as true. Further, the affidavits do not bear on the personal jurisdiction question as all facts within the affidavits relate to activities within Liberia and not connected to Massachusetts.

Massachusetts are raised by individual missionaries to support their work; less than 1% of donations from Massachusetts are given to BMM based in Ohio. D. 51-2 at ¶ 11.

### IV. Procedural History

On March 23, 2018, the Kruas filed their complaint, D. 1. The Kruas then filed an amended complaint on August 6, 2018 adding additional facts and defendants, including BMM. D. 9. The Kruas has filed a second amended complaint by way of attachment to their motion for an extension of time to serve Defendants, D. 13. D. 13-1. BMM has now moved to dismiss. D. 26. This Court heard argument on the motion and took it under advisement, D. 52. The Kruas filed a motion for an additional hearing on March 6, 2019, D. 54, and filed an amended motion for same on April 9, 2019, D. 57.

### V. Discussion

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal quotations and citations omitted). Accordingly, this Court may only exercise personal jurisdiction within the limits set by the Massachusetts long-arm statute and the Constitution. Lyle Richards Intl, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). Here, "[b]ecause the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017).

If the statutory burden is met, constitutional due process requires that a non-resident defendant "ha[s] certain minimum contacts with it such that the maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). This constitutional guarantee of due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (quoting Int'l Shoe Co., 326 U.S. at 319). A court may exercise two types of personal jurisdiction: general and specific, Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 30–31 (1st Cir. 2010), which the Court will address in turn following the statutory inquiry.

### A. **Personal Jurisdiction**

*1. Analysis Under the Long-Arm Statute*

The Kruas have not alleged sufficient facts to satisfy the Massachusetts long-arm statute, Mass. Gen. L. c. 223A § 3. The long-arm statute gives eight bases for personal jurisdiction. Most relevant here is section 3(a), which gives personal jurisdiction over anybody "transacting any business in this commonwealth." Courts have interpreted this provision broadly to cover instances in which a defendant engages in "the purposeful and successful solicitation of business from residents of the Commonwealth." Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). "[F]or jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must have arisen from the defendant's transaction of such business." Id. The Kruas and BMM agree that BMM solicits and receives financial support from Massachusetts churches and individuals and has two missionaries based in Massachusetts, although only 1% of donations make their way to BMM in Ohio. Additionally, BMM serves as a tax preparation service to its missionaries in Massachusetts, D. 51-2 at ¶ 8, and issues a W-2 to its Massachusetts missionaries, id. at ¶ 10.

Assuming that these limited contacts sufficient to meet the first prong for jurisdiction under § 3(a), the Kruas still cannot satisfy the second prong of the analysis because their claims do not arise from BMM's business in Massachusetts. BMM's contacts with Massachusetts essentially began with the establishment of families as missionaries in Massachusetts. That mission did not begin until 1999. Id. at ¶ 3. The commencement of the mission, and thus the commencement of BMM's meaningful contact with Massachusetts, came more than five years after the alleged discrimination by BMM against the Kruas in the United States. Id. The Kruas' claims, therefore, have no temporal connection to BMM's Massachusetts conduct and the Kruas' claim could not arise from BMM's transaction of business here.

The remaining bases for jurisdiction under the long-arm statute are equally unavailing for the Kruas. The Kruas have not alleged any actions by BMM in Massachusetts that would constitute "contracting" within the Commonwealth or that "cause[ed] tortious injury" within the Commonwealth as required by § 3(b) and § 3(f) or § 3(c), respectively. The Kruas have also not alleged sufficient facts to establish general jurisdiction over BMM, as discussed below, which is necessary for jurisdiction under § 3(d). See Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D. Mass. 2008) (noting that "§ 3(d) would only apply if general jurisdiction existed over the Individual Defendants"). The Kruas' conclusory allegation that BMM is "essentially at home" in Massachusetts, D. 43 at 4, does not establish such jurisdiction over BMM. Further, BMM does not own or maintain property or a domicile within Massachusetts as required by § 3(e) or § 3(g). Finally, BMM has not "been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order of alimony, custody, child support or property settlement." Mass. Gen. L. c. 223A § 3(h). Although the Kruas have failed to satisfy the long-

7

arm showing and the Court could end its jurisdictional analysis here, the Court proceeds to the constitutional analysis.

2. *Constitutional Analysis*

a. General Jurisdiction

For general jurisdiction, an out-of-state entity such as BMM must have "affiliations with the State" that "are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe, 326 U.S. at 317). "With respect to a corporation, the place of incorporation and principal place of business" are the "paradigm" bases for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). The "plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).

While the Court must construe the facts "in the light most congenial to the plaintiff's jurisdictional claim," Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (citations and quotations omitted), the Kruas' complaint and filings do not provide sufficient factual support for the assertion that BMM has sufficient contacts with Massachusetts to satisfy general jurisdiction. The Kruas allege that BMM sent two missionaries to Massachusetts to take the Kruas to buy groceries, communicated with the Kruas in Massachusetts in relation to tickets to a fundraising dinner and sent Plaintiff Rev. Krua a letter in Massachusetts denying him employment. D. 13-1 at ¶¶ 172-173, 185. These contacts, even taken together, do not amount to the "continuous and systematic" contacts that would render BMM "at home" in Massachusetts. The fact that BMM has two missionary families in Massachusetts and receives support from certain churches and individuals in Massachusetts is insufficient to establish substantial, continuous and systematic contacts such that general jurisdiction over an out-of-state entity exists here.

b. Specific Jurisdiction

The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro–Med, 591 F.3d at 9 (citing N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir. 2009)); N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The Court must find that all three are present to assert personal jurisdiction over a defendant. See Astro-Med, 591 F.3d at 9.

  *i.* *Relatedness*

The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., No. 09-cv-10138-DJC, 2011 WL 2413792, at *4 (D. Mass. June 16, 2011) (alterations in original) (quoting Astro–Med, 591 F.3d at 9). This is a "flexible, relaxed standard," id. (quoting Astro–Med, 591 F.3d at 9), but still requires a causal relationship between the Kruas' claim and BMM's forum-related conduct. Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Though not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (quoting Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)). "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Id. (alteration in original) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). Furthermore, a court may have specific jurisdiction in situations where there is only a single contact with the forum state, but that contact must be "meaningful." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996) (citing Burger King, 471 U.S. at 475 n. 18; McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

The Kruas have not alleged a sufficient nexus between BMM's Massachusetts contacts and their claims. The only contact with Massachusetts relevant to the Kruas' claims is a letter sent by BMM to Plaintiff Rev. Krua in Massachusetts denying him employment with BMM. D. 13-1 at ¶ 185. Even accepting that Plaintiff Rev. Krua experienced the injury as a result of BMM's letter in Massachusetts, these circumstances are not sufficient to satisfy the relatedness inquiry where such are not about Defendants' wrongful conduct in the forum or even its connection with the forum. See Walden v. Fiore, 571 U.S. 277, 284-85 (2014) (stating that, to exercise specific jurisdiction, "the relationship must arise out of contacts that the defendant himself creates with the forum State" and that the defendant's "minimum contacts" must arise out of "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there") (citations and internal quotation marks omitted) (emphasis in original); Platten v. HG Berm. Exempted Ltd., 437 F.3d 118 (1st Cir. 2006) (noting that "for minimum contacts analysis, even if the effects of the alleged breach were felt in Massachusetts, there [was] no evidence in the record that the alleged breach itself 'occurred' in this state").

    ii.    *Purposeful Availment*

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state," Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 246 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391), and, even when a defendant has limited contacts with Massachusetts, if those contacts are not related to any claim in the lawsuit, they are not deemed relevant to the specific jurisdiction analysis. Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016); Harlow, 432 F.3d at 60-61 (explaining that contacts relevant for specific jurisdiction are those to which the cause of action are related). The inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails

itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319).

The Kruas' allegations of BMM's contacts with Massachusetts are too limited to satisfy the purposeful availment inquiry. BMM is not registered or authorized to do business in Massachusetts and has no property or bank accounts in Massachusetts. D. 27-1 at ¶¶ 5-7. Of the 444 active BMM missionaries, seventy-two are in the United States and only two missionary families are in Massachusetts. Id. at ¶ 10. The missionaries do not receive direct income from BMM. Id. There are 4,340 churches and 7,428 individuals in the United States that support BMM, with twenty-eight of the churches and thirty-nine of the individuals in Massachusetts. Id. at ¶¶ 11-12. Almost all funds generated in Massachusetts are raised by individual missionaries to support their work; less than 1% of donations from Massachusetts are given to BMM based in Ohio. D. 51-2 at ¶ 11. Given BMM's limited interactions with the forum, it was not foreseeable that BMM would be "haled into court [here]." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 39 (1st Cir. 2016) (internal citations omitted). Accordingly, the Court concludes the Kruas have not met their burden to show that BMM's "contacts with Massachusetts crossed the purposeful availment threshold," id., such that the Court could exercise jurisdiction consistent with due process.

### iii. Reasonableness

The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all

sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). "The purpose of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717.

The Court concludes that exercising personal jurisdiction over BMM would not be reasonable. For the first factor to "have any significance, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Id. at 718 (citation and internal quotation marks omitted). BMM has shown that it has almost no connection to Massachusetts outside of its two missionaries here. While that may not rise to the level of "onerous in a . . . constitutionally significant way," given the near-complete lack of showing regarding its presence in the Commonwealth, this factor weighs less in Kruas' favor than it otherwise might. Considering the second factor, "Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims." Nowak, 94 F.3d at 718. The normally strong interest is weaker here, though, due to the lack of showing regarding the lack of BMM's solicitation of goods or services in the Commonwealth. Accordingly, this factor favors BMM's arguments against the exercise of personal jurisdiction. The third factor weighs in favor of jurisdiction here because, as the First Circuit has made clear, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395 (citing Foster–Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 151 (1st Cir. 1995); Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994); Ticketmaster, 26 F.3d at 211). Massachusetts is clearly a more convenient forum for the Kruas, both citizens of the Commonwealth. The fourth factor as to administration of justice is

"[u]sually . . . a wash," Nowak, 94 F.3d at 718, and does not favor either forum here. As to the fifth factor, other than the Kruas' choice of Massachusetts, the Commonwealth has no greater interest in this matter than another valid forum. That interest is insufficient to outweigh any burden on BMM of litigating in Massachusetts. See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017).

For the aforementioned reasons, the Kruas have failed to meet their burden to establish personal jurisdiction under both the Massachusetts long-arm statute and due process principles.

### B. Failure to State a Claim

The Kruas have also failed to state a claim under Fed. R. Civ. P. 12(b)(6) and, for the reasons stated below, the Court dismisses on this basis as well.

*1. Liberia-based Claims*

The vast majority of the Kruas' claims against BMM concern conduct and actions in Liberia. The Kruas seek relief for these claims under two statutes with a civil cause of action the Torture Victim Protection Act, 28 U.S.C. § 1350, and the Justice Against Sponsors of Terrorism Act, 28 U.S.C. § 1605B. D. 9 at 17-18.[4] Neither statute provides a cause of action for the Kruas against BMM here. The Torture Victim Protection Act of 1991 authorizes a cause of action against "[a]n individual" for "acts of torture and extrajudicial killing committed under authority or color of law of any foreign nation." Mohamad v. Palestinian Auth., 566 U.S. 449, 451 (2012) (citing 28 U.S.C. § 1350). This Act, however, "does not impose liability against organizations." Id. at 452.

---

[4] The Kruas also invoke numerous criminal statutes, D. 13-1 at ¶¶ 52-56, 59, but do not have the authority as private citizens to bring federal criminal actions. See, e.g., Cok v. Consentino, 876 F.2d 1, 2 (1st Cir. 1989) (noting that "[g]enerally, a private citizen has no authority to initiate a federal criminal prosecution").

13

The Justice Against Sponsors of Terrorism Act statute provides that "a national of the United States may bring a claim against a foreign state." 28 U.S.C. § 1605B; see In re Terrorist Attacks on Sept. 11, 2001, 298 F. Supp. 3d 631, 642 (S.D.N.Y. 2018). The Kruas have not alleged that BMM was acting under the authority or color of law of a foreign nation or that BMM itself is a foreign state. BMM is an Ohio corporation and not acting under authority or color of law of any foreign nation. D. 27-1 at ¶ 3.

The Kruas, therefore, have no cause of action under either the Torture Victim Protection Act or the Justice Against Sponsors of Terrorism Act against BMM, even as alleged, for its activities in Liberia.

2. *United States-based claims*

The claim based on domestic conduct against BMM is that BMM discriminated against Plaintiff Rev. Krua in violation of Title VII when it failed to engage him as a missionary. D. 13-1 at ¶ 185. It appears that this allegedly discriminatory conduct occurred in 1994, D. 27 at 3 n. 2; D. 43-1 at 23. "Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC within a specified and relatively short time period (usually 180 or 300 days) after the discrimination complained of, 42 U.S.C. § 2000e–5(e)(1), and that the lawsuit be brought within an even shorter period (90 days) after notice that the administrative charge is dismissed or after the agency instead issues a right-to-sue letter, id. § 2000e–5(f)(1)." Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1, 3 (1st Cir. 2001). The record in this case contains no claim of an administrative complaint having been filed at any point. Further, the instant lawsuit comes over twenty years after the alleged discriminatory conduct. The Kruas' Title VII employment discrimination claim is, therefore, time-barred.

The Kruas argue that equitable tolling should apply to all of their claims, including the claim of employment discrimination. D. 43 at 14-19. "The doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.' Statutory filing deadlines are presumptively subject to equitable tolling." Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) (internal citations omitted). Equitable tolling should be invoked "sparingly." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Equitable tolling is "reserved for cases in which circumstances beyond the litigant's control have prevented him from promptly filing." Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002). The Kruas point to "extraordinary circumstances in remote African villages, unconstitutional colonization and language barriers" as the reasons justifying equitable tolling here. D. 43 at 19. However, the Kruas do not identify how those, or any other, factors impeded them from filing their lawsuit in the time between 1994, at which point the Kruas were living in the United States, and 2018. The Kruas also invoke fraudulent concealment on the part of BMM, D. 43 at 22, but it is unclear how this doctrine applies to the Kruas' employment discrimination claim. The doctrine of fraudulent concealment requires that "the defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts related to the wrongdoing" and that "the plaintiff must have failed to discover these facts within the normal limitations period despite his or her exercise of due diligence." Gonzalez v. United States, 284 F.3d 281, 292 (1st Cir. 2002). As to BMM's concealment of material facts, the only facts alleged in connection with the employment discrimination claim are that BMM sent letters to Plaintiff Rev. Krua denying him employment. D. 13-1 at ¶ 185. There is no allegation of fraudulent concealment that would explain the decades of delay in filing the claim.

For all of these reasons, the Kruas' employment discrimination claim must be dismissed as time-barred.[5]

## VI. Motions for Additional Hearing

Following the hearing on the motion to dismiss, D. 52, the Kruas filed a letter and two motions in further opposition to the motion to dismiss and seeking an additional hearing due to Plaintiff Rev. Krua missing the original hearing. D. 53, 54, 57. The letter and motions are essentially untimely additional filings opposing the motion to dismiss submitted without leave of the court, see L.R. 7.1(b)(3), and the Court declines to consider the substance of them to the extent that they seek to supplement the record.[6] To the extent that they seek a further hearing on the pending motion to dismiss, the hearing on February 27, 2019, D. 52, provided sufficient opportunity for the Kruas to present their arguments. While Plaintiff Rev. Krua was unable to attend, his son, Plaintiff Pastor Torli Harlan Krua, attended and argued the Kruas' positions. Therefore, the Court DENIES the Kruas' motions for an additional hearing on the motion to dismiss, D. 54, 57.

## VII. Conclusion

For the foregoing reasons, the Court ALLOWS BMM's motion to dismiss, D. 26.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[5] Given the Court's dismissal of their claims on these grounds, the Court does not address other potential grounds for dismissal.

[6] In light of this ruling, the Court DENIES BMM's motion to strike these filings, D. 56 as moot.